**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CHRISTIANAH O. ADEFILA,       )
                              )
                Plaintiff,    )
                              )
        v.                    )        1:13CV68
                              )
SELECT SPECIALTY HOSPITAL,    )
                              )
                Defendant.    )

<u>**MEMORANDUM OPINION AND ORDER**</u>

This case comes before the Court on Plaintiff's Motion for Help with Attorney Representation (Docket Entry 7). (<u>See</u> Docket Entry dated Feb. 8, 2013.) For the reasons that follow, the Court will deny the instant Motion.[1]

<u>BACKGROUND</u>

Plaintiff commenced this action on January 28, 2013, by filing pro se an Application to Proceed In Forma Pauperis (Docket Entry 1) and a Complaint (Docket Entry 2). The Court denied that Application on the ground that Plaintiff did not qualify for pauper

---

[1] A motion for appointment of counsel constitutes a pretrial matter as to which the undersigned United States Magistrate Judge may enter an order. <u>See</u> 28 U.S.C. § 636(b)(1)(A); <u>McNary v. Norman</u>, No. 96-3421, 134 F.3d 374 (table), 1998 WL 4738, at *3 (7th Cir. Jan. 6, 1998) (unpublished); <u>In re Lane</u>, 801 F.2d 1040, 1042 (8th Cir. 1986); <u>Siers v. Morrash</u>, 700 F.2d 113, 115 (3d Cir. 1983); <u>Williams v. Canady</u>, No. 5:10CV558FL, 2011 WL 1897440, at *1-2 (E.D.N.C. May 18, 2011) (unpublished); <u>Abu-Shabazz v. Sondervan</u>, No. AW-03-1012, 2004 WL 1391408, at *2 (D. Md. Feb. 17, 2004) (unpublished), <u>aff'd</u>, 96 F. App'x 920 (4th Cir. 2004); <u>Kampfer on behalf of Kampfer v. Gokey</u>, 159 F.R.D. 370, 372 (N.D.N.Y. 1995); <u>Lequia v. Temco Serv. Indus.</u>, No. 88CIV0204(SWK), 1988 WL 120131, at *1 (S.D.N.Y. Oct. 28, 1988) (unpublished).

status.  (Docket Entry 5.)[2]  She then paid the filing fee (see Docket Entry dated Feb. 8, 2013) and filed the instant Motion (Docket Entry 7), as well as an Amended Complaint (Docket Entry 8), whereupon the Clerk issued a Summons as to Defendant Select Specialty Hospital ("Defendant Hospital") (Docket Entry 9).[3]

According to the Amended Complaint, Plaintiff "began employment with [Defendant Hospital] on May 16, 2012 . . . [and] held the position of a Registered Nurse . . . [when,] [o]n June 25th 2012, . . . the CNO (Chief Nursing Officer) . . . told [Plaintiff] that [she was] fired . . . because [she] left medication in the patient's room while [she] took the patient for a procedure in [sic] another floor."  (Docket Entry 8 at 2; see also id. at 2-3 (appearing to admit that Plaintiff, in fact, had left medicine in patient's room while she took patient for treatment).)  The Amended Complaint "demands judgement against [Defendant Hospital] for violation of Title VII of the Civil Rights Act of 1964 . . . ."

_____

[2] "[The] Application reflects that [Plaintiff's] husband earns an annual salary of $48,000 and received $14,000 in Social Security income in the last year, as well as that [Plaintiff and her husband] have no dependents.  Given those circumstances and the monthly expenses claimed in the Application, the Court conclude[d] that Plaintiff ha[d] the ability to pay the modest filing fee . . . ."  (Docket Entry 5 at 1 n.1 (internal citations omitted).)

[3] The original Complaint listed Defendant Hospital in the caption, but named as defendants in the body an "EEO Manager, Select Medical Corporation," as well as a "Human Resource Co-ordinator" and an "RN Charge Nurse" of Defendant Hospital.  (Docket Entry 2 at 1-2.)  The Amended Complaint, however, names only Defendant Hospital as a defendant.  (Docket Entry 8 at 1-2.)  Accordingly, the caption for this case, as well as the docket text associated with the Amended Complaint, should identify as a defendant only Defendant Hospital.

(Id. at 13; see also id. at 1 (predicating jurisdiction on "Federal Question 28 U.S.C. § 1331 and Title VII"), 10 (alleging that Plaintiff "was discriminated against . . . [when] fired . . . violat[ing] [her] right [sic] according to Title VII").)

Liberally construed, the Amended Complaint asserts these claims:

1) discrimination based on national origin, in the form of both hostile work environment and termination of employment, premised on the allegation that a "Charge Nurse[,] who [is] . . a Sierra Leonian [whereas Plaintiff is] a Nigerian[,] said hateful and racial things to [Plaintiff] like:  Nigerians are carnivals [sic] . . . because [the Charge Nurse's] aunt married a Nigerian and now she got [sic] missing" (id. at 6; see also id. at 5 (alleging, under heading "Harrassment [sic]," that Charge Nurse "berated [Plaintiff] in the presence of [her] patients that [she] didn't know what [she was] doing[,] . . . slapped [Plaintiff's] wrist and statched [sic] things from [her] hand[,] . . . [and] hid away [Plaintiff's] documentations [sic] on a new admit . . . [before] show[ing] up with the papers and screem[ing] [sic] so loudly at [her] in the hallway [']what is your problem['] . . . and then throw[ing] the papers at [her] . . . in front of all the staff"), 8 (asserting that Charge Nurse "got [Plaintiff] fired"));

2) discrimination based on "disability," in the form of both hostile work environment and termination of employment, premised on the allegations that A) Plaintiff has a "limitation of not lifting

-3-

anything over 50 lbs as ordered by [her] doctor following an injury on [her] former job in 2010," B) an "[A]ssistant [C]harge [N]urse . . . asked [Plaintiff] to help her with a patient . . . [who] weighed . . . 200-300 lbs so [Plaintiff] told [the Assistant Charge Nurse that Plaintiff] could not do it by [her]self," C) the Assistant Charge Nurse "got so mad and she went and called [the Charge Nurse] and reported [Plaintiff]," and D) "[s]ince then [the Charge Nurse] screemed [sic] and yelled at [Plaintiff] at any time [Plaintiff] interacted with [the Charge Nurse]" (id. at 7; see also id. at 5 (setting out, under heading "Harrassment [sic]," alleged abuse by Charge Nurse), 8 (asserting that Charge Nurse "got [Plaintiff] fired")); and

3) retaliation, in that "[o]n October 15th 2012 [Plaintiff] started working with Davita [Dialysis Inc.] . . . [and a] week into [her] orientation [she] received a message . . . that [she] should report to [Defendant Hospital; however, the next day] . . . [Plaintiff] received a call on [her] cell phone from the manager [at Davita Dialysis] stating that [Plaintiff] should leave [Defendant Hospital] immediately because [Defendant Hospital] called and told [the Davita Dialysis manager] that [Plaintiff] could not work on any of [Defendant Hospital's] patients because [she] was terminated and [she] had filed charge [sic] against [Defendant Hospital] with the EEOC . . . and [later that day the Davita Dialysis manager] said since [Plaintiff] ha[d] filed charge [sic] against [Defendant Hospital the Davita Dialysis manager] no

-4-

longer could have [Plaintiff and,] . . . [o]n the 5th of November 2012, [Davita Dialysis] fired [Plaintiff]" (id. at 11-12).

Plaintiff attached to her Amended Complaint five exhibits:

1) a letter dated July 1, 2012, from Plaintiff to the Chief Executive Officer of Defendant Hospital asking "to have [her] termination decision to be reconsidered" (id., Ex. E);

2) a "Charge of Discrimination" dated August 16, 2012, presented by Plaintiff to the United States Equal Employment Opportunity Commission ("EEOC") and assigned Charge Number 435-2012-00798, which alleges discrimination by Defendant Hospital in May and June 2012 based on "Race," "National Origin," and "Disability" (id., Ex. D);[4]

3) a "Dismissal and Notice of Rights" by the EEOC as to Charge Number 435-2012-00798, dated November 2, 2012, reporting the EEOC's "determination[,] [b]ased upon its investigation, [that it was] unable to conclude that the information obtained establishe[d] violations of the statutes" (id., Ex. A);

4) a "Charge of Discrimination" dated December 17, 2012, presented by Plaintiff to the EEOC and assigned Charge Number 435-

---

[4] Said Charge of Discrimination identifies June 22, 2012, both as the "Latest" of the "Date(s) Discrimination Took Place" and as the date Plaintiff "was discharged"; however, at another point, it (apparently mistakenly) gives "July 22, 2012," as the date Plaintiff "received a call . . . inform[ing] [her] that [she] was discharged." (Docket Entry 8, Ex. D.) Regarding race discrimination, said Charge of Discrimination describes the CNO who notified Plaintiff of her discharge as "White-American" and asserts that "[a] White-American has had at least two medication errors, but she was not discharged." (Id.) As noted above, the Amended Complaint does not contain any allegation of race discrimination.

-5-

2013-00123, which alleges "Retaliation" by Defendant Hospital on November 5, 2012 (id., Ex. B); and

5) a "Notice of Right to Sue (Issued on Request)" by the EEOC to Plaintiff as to Charge Number 435-2013-00123, dated January 31, 2013, in which the EEOC states that "[l]ess than 180 days have passed since the filing of this charge, but . . . it is unlikely that the EEOC will be able to complete the administrative processing within 180 days . . . [and that] [t]he EEOC is terminating its processing of this charge" (id., Ex. C).

## DISCUSSION

Title VII makes it "an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1); see also Jordan v. Alternative Res. Corp., 458 F.3d 332, 339 (4th Cir. 2006) (observing that discrimination as to "terms, conditions, or privileges of employment, because of [an] individual's race[, color, religion, sex, or national origin] . . . includes maintaining a racially[, color-based, religiously, sexually, or national origin-based] hostile work environment" (internal quotation marks omitted)). In addition, Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e-3(a).

-6-

Further, although "Title VII is unquestionably silent regarding discrimination motivated by a person's physical or mental impediment[,] [s]uch claims are contemplated . . . by the Americans with Disabilities Act [(the "ADA")] . . . ." <u>Sanchez Ramos v. Puerto Rico Police Dep't</u>, 392 F. Supp. 2d 167, 176 (D.P.R. 2005).

More specifically, as pertinent here, Subchapter I of the ADA declares that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); <u>see also</u> <u>Fox v. General Motors Corp.</u>, 247 F.3d 169, 176 (4th Cir. 2001) ("[T]he ADA, like Title VII, creates a cause of action for hostile work environment harassment."). Similarly, the ADA contains a "retaliation provision [that] provides, in relevant part, 'no person shall discriminate against any individual because such individual made a charge under [the ADA].'" <u>Reynolds v. American Nat'l Red Cross</u>, 701 F.3d 143, 154 (4th Cir. 2012) (quoting 42 U.S.C. § 12203(a)) (internal brackets and ellipses omitted). Accordingly, despite its facial invocation only of Title VII, the Amended Complaint (liberally construed) asserts claims both under Title VII (for discrimination based on national origin and for retaliation due to filing an EEOC charge of discrimination based on race and national origin) <u>and</u> under the ADA (for discrimination based on disability and for retaliation due to filing an EEOC charge of discrimination based on disability).

-7-

In her instant Motion, Plaintiff asks the Court to "assign[] an attorney to represent [her] in [this] lawsuit." (Docket Entry 7 at 1.) Title VII states, in relevant part, that, "[u]pon application by [a plaintiff who has brought a discrimination or retaliation claim under Title VII] and in such circumstances as the court may deem just, the court may appoint an attorney for such [plaintiff] . . . ." 42 U.S.C. § 2000e-5(f)(1) (emphasis added). Moreover, Subchapter I of the ADA specifies that "[t]he powers, remedies, and procedures set forth in [S]ection[] . . . 2000e-5 . . . of [Title 42] shall be the powers, remedies, and procedures . . . provide[d] to . . . any person alleging discrimination on the basis of disability in violation of any provision of . . . [the ADA] concerning employment." 42 U.S.C. § 12117. The ADA's retaliation section, in turn, declares that "remedies and procedures available under [S]ection[] 12117 . . . of [Title 42] shall be available to aggrieved persons for violations of [the prohibition on retaliation for filing a charge of discrimination in employment based on disability]." 42 U.S.C. § 12203(c).

Although the foregoing statutory provisions permit the appointment of counsel for plaintiffs pursuing employment discrimination and retaliation claims under Title VII and the ADA, "Title VII [and, by direct extension, ADA] litigants have no statutory right to counsel." Anderson v. Potter, 149 F. App'x 175, 175 (4th Cir. 2005) (citing Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983), and Young v. K-Mart Corp., 911 F. Supp. 210,

-8-

211 (E.D. Va. 1996)) (emphasis added); accord Castner v. Colorado Springs Cablevision, 979 F.2d 1417, 1420 (10th Cir. 1992) (citing Poindexter v. Federal Bureau of Investigation, 737 F.2d 1173, 1179 (D.C. Cir. 1984), and Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 269 (9th Cir. 1982)); Gonzalez v. Carlin, 907 F.2d 573, 579 (5th Cir. 1990); Hunter v. Department of the Air Force Agency, 846 F.2d 1314, 1317 (11th Cir. 1988); Slaughter v. City of Maplewood, 731 F.2d 587, 590 (8th Cir. 1984); Tyson v. Pitt Cnty. Gov't, 919 F. Supp. 205, 206 (E.D.N.C. 1996); McIntyre v. Michelin Tire Corp., 464 F. Supp. 1005, 1008 (D.S.C. 1978); see also Melton v. Freeland, No. 1:96CV516, 1997 WL 1048768, at *2 (M.D.N.C. Apr. 8, 1997) (unpublished) (Tilley, J.) (addressing parallel attorney appointment authority as to ADA public accommodation claims).  "To the contrary, the statutory language expressly leaves this decision to the discretion of the trial court."  Poindexter, 737 F.2d at 1183; accord Anderson, 149 F. App'x at 175; Castner, 979 F.2d at 1420; Gonzalez, 907 F.2d at 579; Hunter, 846 F.2d at 1317; Slaughter, 731 F.2d at 590; Jenkins, 721 F.2d at 879; Ivey, 673 F.2d at 269; Melton, 1997 WL 1048768, at *2; Tyson, 919 F. Supp. at 206-07; Young, 911 F. Supp. at 211; McIntyre, 464 F. Supp. at 1008.

To help ensure proper exercise of that discretion, the "[f]actors [this] [C]ourt should consider when determining whether to appoint counsel are:  (1) whether the [plaintiff] has the financial ability to retain counsel; (2) whether the [plaintiff] has made a diligent effort to retain counsel; (3) whether the

[plaintiff] has a meritorious claim; and (4) whether the plaintiff is capable of representing herself." Melton, 1997 WL 1048768, at *2-3 (citing Tyson, 919 F. Supp. at 207, and Young, 911 F. Supp. at 211); accord Castner, 979 F.2d at 1420-21; Poindexter, 737 F.2d at 1185; Jenkins, 721 F.2d at 880; McIntyre, 464 F. Supp. at 1008.[5] The discussion which follows addresses each of those factors.

## 1. Financial Ability

Plaintiff's instant Motion does not contend that a lack of funds has impeded her ability to hire an attorney. (See Docket Entry 7 at 1-2.)[6] Further, a prior sworn statement from Plaintiff

---

[5] The Fifth, Eighth, and Ninth Circuits' previously cited decisions did not identify the fourth above-listed factor concerning the plaintiff's ability to handle the case, see Gonzalez, 907 F.2d at 580; Slaughter, 731 F.2d at 590; Ivey, 673 F.2d at 269, and the Eleventh Circuit's above-cited decision did not directly reference the first above-listed factor regarding the plaintiff's ability to pay, see Hunter, 846 F.2d at 1317; however, more recently, district courts within all four of those Circuits have addressed all four of the above-cited factors, see, e.g., Lampkin v. Texas Dep't of Pub. Safety, No. A12CV876SS, 2013 WL 264541, at *5 (W.D. Tex. Jan. 22, 2013) (unpublished); Maxwell v. Express Scripts, Inc., No. 4:11CV1315CDP, 2012 WL 996651, at *7 (E.D. Mo. Mar. 22, 2012) (unpublished); Winchester v. Yakima Cnty. Super. Ct., No. CV-10-3057-EFS, 2011 WL 133017, at *1 (E.D. Wash. Jan. 14, 2011) (unpublished); Donohoe v. Food Lion Stores, Inc., 253 F. Supp. 2d 1319, 1321 (N.D. Ga. 2003).

[6] The instant Motion does state that Plaintiff "will be willing to pay the lawyer assigned to [her] after the case is over if need be." (Docket Entry 7 at 1.) That statement, however, fails to assert that Plaintiff could not afford to pay an attorney before the case ends; at most, it implies an unwillingness by Plaintiff to compensate counsel until the conclusion of the case, i.e., a preference by Plaintiff for a contingency arrangement. Moreover, it appears Plaintiff, in fact, secured counsel for purposes of proceedings before the EEOC, but that said counsel declined to handle the litigation in this Court because "she was too busy to take [the] case." (Id.)

reflects "that [her] husband earns an annual salary of $48,000 (Docket Entry 1 at 1) and received $14,000 in Social Security income in the last year (id. at 2), as well as that [she and her husband] have no dependents (id. at 3)."  (Docket Entry 5 at 1 n.1.)  Nor do the monthly expenses of Plaintiff and her husband outstrip their income.  (See Docket Entry 1 at 3.)  This case thus does not represent one in which "payment of fees would jeopardize the plaintiff's ability to maintain the necessities of life." Poindexter, 737 F.2d at 1186.  Additionally, because the statutes underlying Plaintiff's claims "authorize[] the Court to allow the prevailing party a reasonable attorney's fee, it appears that if her claim has merit then she might be able to obtain counsel on a contingency basis."  Melton, 1997 WL 1048768, at *3; accord McIntyre, 464 F. Supp. at 1010; see also Edwards v. Senatobia Mun. Sch. Dist., No. 2:12CV39-MPM-JMV, 2012 WL 1989224, at *1 (N.D. Miss. June 4, 2012) (unpublished) ("[M]any, if not most plaintiff's attorneys, will take cases based on contingency fees.").

At a minimum, "with a steady stream of income [Plaintiff] [i]s in no worse financial straits than many litigants who seek an attorney to take their case, perhaps under a contingency or other modified payment basis."  Gonzalez, 907 F.2d at 580.  This factor therefore weighs against appointment of counsel.  See Poindexter, 737 F.2d at 1183 (observing that rationale for appointment of counsel in this context is "implicated most seriously when a plaintiff cannot afford to hire counsel"), 1186 ("The appointment

-11-

provision is primarily intended to protect plaintiffs with limited
economic means."). Indeed, "[i]f a court finds that a plaintiff
can afford to hire counsel, this ordinarily will be a dispositive
ground for denying the request for appointment." Id. at 1186.

## 2. Diligence of Effort

The instant Motion proffers that Plaintiff "ha[s] been calling
all the lawyers from the attorney refferal [sic] list and also
online list, but to no avail." (Docket Entry 7 at 1.) It,
however, provides no further details about the lists Plaintiff
reportedly utilized. (See id.) In other words, "[t]hough
Plaintiff has stated [s]he made efforts to employ counsel, [s]he
has failed to specify even the number of contacts [s]he has made.
The [proffer] provided by Plaintiff [is thus] insufficient for the
Court to determine if [s]he has satisfied this factor." Donohoe v.
Food Lion Stores, Inc., 253 F. Supp. 2d 1319, 1321 (N.D. Ga. 2003);
see also Jenkins, 721 F.2d at 880 (indicating that plaintiff
seeking appointment of counsel should identify "number of contacts
with potential counsel"). Under these circumstances, the Court
will treat this factor as neutral.

## 3. Merits of Claim(s)

The Court next assesses "whether [Plaintiff] has a meritorious
claim[.]" Melton, 1997 WL 1048768, at *3.[7] In this regard, the
Court notes first that (as documented in the Background section)

---

[7] In making this assessment, "the [C]ourt need not . . . go so
far as to actually decide the merits of the case . . . ."
Poindexter, 737 F.2d at 1187 n.35.

-12-

the EEOC rendered an adverse determination on Plaintiff's claims of national origin and disability discrimination. Although the Court "may not give preclusive effect to an EEOC finding that the evidence does not support a finding of discrimination . . ., the EEOC's administrative finding is a highly probative factor to be considered." Castner, 979 F.2d at 1422 (internal quotation marks omitted); accord Gonzalez, 907 F.2d at 580; Hunter, 846 F.2d at 1317. The EEOC's finding contrary to Plaintiff's position takes on even greater significance in this case, given her admission (detailed in the preceding subsection) that multiple attorneys have declined to take her case. See Rand v. Wolf Creek Nuclear Operating Corp., Civil Action No. 11-4136-KHV-GLR, 2012 WL 1154509, at *4 (D. Kan. Apr. 5, 2012) (unpublished) ("[A]n adverse administrative finding coupled with many attorneys declining to represent the plaintiff, may 'provide strong evidence that [the] plaintiff's case lacks merit.'" (quoting Jones v. Pizza Hut, Inc., No. 10-CV-442-WYD-KMT, 2010 WL 1268048, at *2 (D. Colo. Mar. 30, 2010) (unpublished))); Brownlee v. American Elec. Power, No. 1:11CV97, 2011 WL 3163183, at *1 n.1 (N.D. Ind. July 26, 2011) (unpublished) ("[The plaintiff] has made several attempts to obtain counsel on her own; none, however, would apparently take the case. . . . [T]his is an indication that [her] case may indeed have little merit . . . [particularly given that] it received a no probable cause finding at the administrative level . . . ."); Application of Miller, 427 F. Supp. 896, 898 (W.D. Tex. 1977)

-13-

("[T]he inability to find a lawyer to handle the case on a contingent fee basis, when coupled with the adverse finding by the EEOC, indicates a probability that [the plaintiff's] case against his employer is without merit." (internal citation omitted)).

Further, as set forth in the Background section, the Amended Complaint focuses on the alleged national origin- and disability-based bias of the Charge Nurse, but does not provide any non-conclusory factual matter that would support a finding that the Charge Nurse "was either primarily responsible for [the adverse] employment decision or had influence over the relevant decisionmaker." Lampkin v. Texas Dep't of Pub. Safety, No. A12CV876SS, 2013 WL 264541, at *4 (W.D. Tex. Jan. 22, 2013) (unpublished). "In other words, [Plaintiff] has presented no fact[ual] [allegations] that suggest any causal link between her alleged disability [or national origin] and [the challenged] employment decision." Id. Moreover, (again, as detailed in the Background section) the Amended Complaint acknowledges that Defendant Hospital gave a nondiscriminatory explanation for its decision to fire Plaintiff, i.e., that she improperly handled medication. Given the absence, at least at this point, of any basis to treat that explanation as pretextual, it "would constitute a legitimate nondiscriminatory reason for Defendant [Hospital's] actions and would defeat Plaintiff's claim." Donohoe, 253 F. Supp. 2d at 1323. At a minimum, these circumstances "raise serious questions about the strength of Plaintiff's case." Id.

-14-

Additional questions about the meritoriousness of Plaintiff's case arise when one scrutinizes the allegations of animus based on national origin and disability lodged against the Charge Nurse in the Amended Complaint (which animus Plaintiff then seemingly seeks to impute without factual support to Defendant Hospital). Specifically, the analysis of the Amended Complaint in the Background section shows that the entire foundation for Plaintiff's discriminatory firing and hostile work environment claims consists of one alleged remark about Nigerians by the Charge Nurse and one incident where the Charge Nurse purportedly got mad when Plaintiff refused to lift a patient. Based on those two events, Plaintiff apparently would have a fact-finder take two logical leaps:

1) that bias against Nigerians and the disabled caused all of the other negative interactions Plaintiff had with the Charge Nurse (which, as described in the Amended Complaint and summarized in the Background section, otherwise would reflect boorish and unprofessional conduct by the Charge Nurse, but not discrimination based on national origin or disability); and

2) that Plaintiff's negative interactions with the Charge Nurse constituted a national origin- and disability-based hostile work environment for which Defendant Hospital bore responsibility, as well as the impetus for its decision to fire Plaintiff.

Many grounds exist to discount the viability of claims predicated on such an attenuated inferential chain. As an initial matter, just as the "[l]aw does not blindly ascribe to race all

-15-

personal conflicts between individuals of different races," <u>Hawkins</u> <u>v. Pepsico, Inc.</u>, 203 F.3d 274, 282 (4th Cir. 2000), the law does not permit the assumption that all personal conflicts between individuals of differing national origins or physical conditions occurred due to such differences. In addition, the Amended Complaint acknowledges the existence of an explanation for the conflict between Plaintiff and the Charge Nurse totally unrelated to bias premised on national origin or disability: "I believe [the Charge Nurse] was afraid that I am not going to be pushed to do unlawful things like she enjoys doing [such as not wearing gloves as required] and so she wanted to get rid of me quickly. . . . It was only the Charge Nurse who had told me anything [critical of my job performance] and since she was not happy because I don't just follow her like a zombie, she must have reported me and wanted me fired." (Docket Entry 8 at 9; <u>see also</u> <u>id.</u> at 3-4 (describing two incidents in which Plaintiff challenged directives from the Charge Nurse that Plaintiff viewed as jeopardizing patient welfare and then sought to have a physician assistant (on one occasion) and a doctor (on the other) overrule the Charge Nurse), 10 (complaining that Charge Nurse slept while on duty).)

Notably, Plaintiff's letter to the Chief Executive Officer of Defendant Hospital requesting reconsideration of her firing describes in detail the same two disagreements Plaintiff had with the Charge Nurse over patient care later referenced in the Amended Complaint; however, at no point in that letter did Plaintiff assert

-16-

in anyway that she believed animus stemming from national origin or disability motivated the Charge Nurse, much less that the termination decision resulted from any such bias. (See id., Ex. E.) Similarly, the foregoing letter omits any discussion of the alleged abusive conduct (e.g., screaming, belittling, slapping, and snatching or hiding of papers) by the Charge Nurse for which the Amended Complaint apparently would have Defendant Hospital held responsible. (See id.) As a final matter, the fact that Plaintiff felt comfortable communicating directly with Defendant Hospital's Chief Executive Officer and going over the Charge Nurse's head to a physician assistant and a doctor makes all the more glaring Plaintiff's admitted failure to notify anyone in a position of authority at Defendant Hospital about: 1) the Charge Nurse's alleged creation of a national origin- and disability-based hostile work environment; and/or 2) Plaintiff's desire for accommodation of her purported lifting restriction. (See id. at 8 (giving conclusory rationale for Plaintiff's decision not to report Charge Nurse's conduct to CNO, but offering no excuse as to why Plaintiff failed to tell others in Defendant Hospital hierarchy about that matter or any need for accommodation)).[8]

---

[8] "Employers are not automatically liable for acts of harassment levied by supervisors against subordinates. Rather, there must be some basis in law for imputing the acts of the supervisor to the employer." Spriggs v. Diamond Auto Glass, 242 F.2d 179, 186 (4th Cir. 2001) (internal citation omitted). Moreover, liability for failure to accommodate a disability cannot arise "until [the plaintiff] provide[s] a proper diagnosis and request[s] specific accommodation." Halpern v. Wake Forest Univ.
(continued...)

-17-

Simply put, "[t]hough the [the discrimination portion of the Amended Complaint] could not be construed as frivolous, it is certainly not a strong discrimination case. The accusations by [] [P]laintiff are not strongly supported by a showing of any discriminatory intent." Tyson, 919 F. Supp. at 207; accord Young, 911 F. Supp. at 212. Nor does Plaintiff appear to have a meritorious retaliation claim. Indeed, if Defendant Hospital lawfully fired Plaintiff because it concluded she mishandled medication (as the record in its current state would tend to indicate) Defendant Hospital likely thereafter could bar Plaintiff from working in its facility as a contractor (i.e., with Davita Dialysis), regardless of the fact that Plaintiff had filed an EEOC charge concerning her firing. See Ogletree v. Glen Rose Indep. Sch. Dist., 443 F. App'x 913, 914-18 (5th Cir. 2011) (affirming entry of summary judgment against the plaintiff on retaliation claim predicated on the refusal of her former employer (who previously had fired her for alleged misconduct) to permit her to volunteer at one of its facilities and/or to re-hire her, where former employer cited non-retaliatory rationale of prior misconduct allegations and observing that the former employer's action was "not at all arbitrary: if it hired [the plaintiff or permitted her to volunteer] despite the prior accusations against her, and

---

[8](...continued)
Health Scis., 669 F.3d 454, 465 (4th Cir. 2012) (internal ellipses and quotation marks omitted).

-18-

another alleged instance of [similar misconduct] occurred, [said employer] and its employees could face civil liability").[9]

"In sum, although [Plaintiff's] assertions could [] conceivably survive[] a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), they [a]re insufficient to warrant appointment of counsel." Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 205 (2d Cir. 2003).

### 4. Capacity for Self-Representation

"Finally, [the] [C]ourt [will] consider [] [P]laintiff's ability to present the case adequately." Poindexter, 737 F.2d at 1188. In this regard, the Court "look[s] to the complexity of the legal issues and [P]laintiff's ability to gather and present crucial facts." Castner, 979 F.2d at 1422. As the summary in the Background section reflects, in her Amended Complaint, Plaintiff has demonstrated the ability to set forth detailed factual allegations and to articulate recognizable claims for employment discrimination and retaliation. Moreover, such claims generally proceed under well-established legal frameworks. See, e.g., Hoyle v. Freightliner, LLC, 650 F.3d 321, 331–38 (4th Cir. 2005). Further, although virtually all pro se plaintiffs face "serious[] disadvantage[s]," Poindexter, 737 F.2d at 1188, Plaintiff's

---

[9] Moreover, given the absence of any allegation in the Amended Complaint that Defendant Hospital encouraged Davita Dialysis to fire Plaintiff, any retaliation claim arising from Davita Dialysis's alleged decision to fire Plaintiff because she had filed an EEOC claim against Defendant Hospital would seem to lie against Davita Dialysis not against Defendant Hospital.

-19-

prospects appear better than most, because, as a registered nurse, she "is an educated individual who is capable of presenting h[er] case in a competent fashion," Young, 911 F. Supp. at 212.

Accordingly, this factor weighs against appointment of counsel. See Williams v. Court Servs. & Offender Supervision Agency for D.C., 878 F. Supp. 2d 263, 267 (D.D.C. 2012) ("[T]here is no indication that [this] case is more complex than many of the straightforward actions filed in this court under Title VII, an area where the law is fairly settled. Moreover, [the plaintiff] has represented himself fairly ably in proceedings to date. Although the plaintiff's pleadings are not always perfectly clear, he has demonstrated an ability to communicate with the court and to file appropriate motions. . . . [The plaintiff] appears prepared to be an effective advocate on his own behalf, and [thus] appointment of counsel . . . is not necessary . . . ."); Spell v. Maryland Human Relations Comm'n, Civil Action No. RDB-11-0803, 2011 WL 6000862, at *6 (D. Md. Nov. 28, 2011) (unpublished) (declining to appoint counsel under Section 2000e-5(f)(1) based on finding that the plaintiff's "pleadings adequately present his claims and the legal issues do not appear unduly complex"); Brownlee, 2011 WL 3163183, at *2 ("[T]he case is a relatively straightforward action under the [ADA]. [The plaintiff] claims that the [d]efendant failed to accommodate her disability and terminated her employment in retaliation . . . . [This] factor – the difficulty of her claims – cuts against [her] request for counsel . . . [as does the

-20-

fact that she] has already adequately articulated her claims . . . ." (internal citations omitted)).

CONCLUSION

The statutory provisions at issue do not "ensure appointment of counsel as a matter of course." Poindexter, 737 F.2d at 1183; see also Castner, 979 F.2d at 1421 ("[T]he court must keep in mind that Congress has not provided a mechanism for compensating such appointed counsel. Thoughtful and prudent use of the appointment power is necessary so that willing counsel may be located without the need to make coercive appointments."). Moreover, the record indicates that Plaintiff "has the financial ability to retain counsel," Melton, 1997 WL 1048768, at *3, that she likely does not have "a meritorious claim," id., and that she has the "capab[ility] of representing herself," id. As a result, even viewing the question of whether Plaintiff diligently has attempted to hire an attorney as at equipoise, the balance of relevant factors heavily tilts against her instant request for appointment of counsel.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Help with Attorney Representation (Docket Entry 7) is **DENIED**.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

March 7, 2013

-21-