IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTIANAH O. ADEFILA,      )
                             )
         Plaintiff,          )
                             )
     v.                      )     1:13CV68
                             )
SELECT SPECIALITY HOSPITAL,  )
                             )
         Defendant.          )

**<u>MEMORANDUM OPINION AND ORDER</u>**

THOMAS D. SCHROEDER, District Judge.

Before the court in this employment action is a motion for summary judgment filed by Defendant Select Specialty Hospital ("Select")[1] pursuant to Federal Rule of Civil Procedure 56. (Doc. 30.) Plaintiff Christianah O. Adefila, proceeding *pro se*, alleges that Select terminated her because of her national origin and disability, subjected her to a hostile work environment, and retaliated against her for filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq.</u>, and the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u> For the reasons set forth below, Select's motion will be granted and the case will be dismissed.

---

[1] Select notes that its legal name is Select Specialty Hospital – Greensboro, Inc. (Doc. 17 at 1.)

## I. BACKGROUND

Select is a long-term acute care hospital that provides treatment to patients with chronic diseases or complex medical conditions. During the relevant period, Robin Clark was Select's Chief Nursing Officer. (Clark Declaration ("Clark Decl."), Doc. 31-1 ¶¶ 3-4.) Clark hired Adefila as a full-time registered nurse ("RN") on May 16, 2012. (Id. ¶ 7; Adefila Deposition ("Adefila Dep."), Doc. 31-5 at 61.) As an RN, Adefila's job duties included evaluating patients and assuring the implementation of each patient's "individual nursing plan." (Clark Decl. ¶ 8.) Adefila was required to conform to Select's "Model Nursing Practices and Procedures" (the "Model Practices"), which include policies relating to administering medication and other typical job duties. (Id. ¶¶ 9-10.)

According to several Select employees, during her short term of employment[2] Adefila performed her job at a substandard level and was resistant to following the Model Practices. For example, Clark stated that Adefila needed constant reminders to perform basic and crucial patient-care tasks and she failed to prioritize obligations such as administering medicine over her personal break time. (Id. ¶¶ 16-17, 21.) Abigail Jackson,

---

[2] As a condition of employment, Adefila was required to complete a 90-day introductory period during which she could be terminated at any time for unsatisfactory performance. (Id. ¶ 11.) She acknowledges she was within this period when she was terminated. (Adefila Dep. at 61.)

2

Adefila's direct supervisor, stated that within the first 60 days of Adefila's employment, she had to counsel Adefila "on at least three occasions regarding her nursing practices." (Jackson Declaration ("Jackson Decl."), Doc. 31-4 ¶¶ 5, 7.) On one of these occasions, Jackson admonished Adefila after she had administered medicine to a patient "free-flow" – that is, without an IV pump. (Id. ¶ 8.) This practice is extremely dangerous to patients and a violation of the Model Practices. (Id. ¶ 9.) And, Elaine Sorenson, Select's Director of Quality Management, concluded that Adefila "lacked critical thinking skills," "was unable to present her reports in an orderly fashion and exhibited a poor train of thought," and "was often unable to answer basic questions regarding the status or condition of her patients." (Sorenson Declaration ("Sorenson Decl."), Doc 31-3 ¶¶ 3, 7-8.) Adefila has responded to some of these claims in her briefing but has presented no admissible evidence to refute them.

Select terminated Adefila on June 25, 2012, "because her continued disregard of Select's Model Practices posed a direct threat to the safety of [Select's] patients." (Clark Decl. ¶ 32; Adefila Dep. at 61.) Adefila testified that Clark told her she was being terminated because she left medications in a patient's room unattended. (Adefila Dep. at 62.) On July 1, Adefila wrote a letter to Select's Chief Executive Officer,

3

Deana Knight, requesting reconsideration of the termination decision. (Doc. 34 at 9; Knight Declaration ("Knight Decl."), Doc. 31-2 ¶¶ 3, 5.) In the letter, Adefila defended her performance, attributed her issues at work to her strained relationship with Jackson, and claimed that Clark never raised any performance issues with her. (Doc. 34 at 9.) Knight investigated Adefila's claims and, finding them without merit, adhered to the decision. (Knight Decl. ¶¶ 9-15; Adefila Dep. at 64.)

Subsequently, Adefila began working as an Acute Dialysis Nurse at DaVita, Inc. ("DaVita"), on October 10, 2012. (Doc. 34 at 12; Adefila Dep. at 43.) DaVita provides dialysis service to several facilities, including to Select's patients at Select's hospital facility. (Clark Decl. ¶ 37.) While at DaVita, Adefila was assigned to Alamance Regional Medical Center ("Alamance"). (Adefila Dep. at 44.) On October 24, she reported to Select as part of her duties with DaVita. (Id.) She never informed DaVita that she had been terminated by Select earlier in the year. (Id.) On the same day, Clark discovered Adefila on the hospital floor at Select. (Clark Decl. ¶ 38.) Clark contacted a representative of DaVita and informed her that Adefila had been terminated by Select and requested that she be removed from Select's hospital. (Id.) Adefila was then sent home. (Adefila Dep. at 49-50.)

4

That day, Adefila's supervisor at DaVita told her that DaVita "couldn't have [her] anymore." (Id.) According to Adefila, her supervisor needed three days to finalize her termination. (Id. at 50.) However, she continued to report to work until November 5, when her supervisor told her she was not qualified to work at Alamance. (Id. at 51-52.) Even after that, Adefila was given an opportunity to find another placement within DaVita (id. at 53), but she chose not to look for an alternative placement because her supervisor did not recommend her (id. at 54).

Adefila filed a charge of discrimination with the EEOC on August 16, 2012. She alleged discrimination based on her national origin, race, and disability. (Doc. 8-1 at 4-5.) The EEOC mailed a right-to-sue letter for this charge on November 2, 2012. (Id. at 1.) Adefila filed a second charge on December 17, 2012, alleging retaliation. (Id. at 2.) She then initiated this suit on January 28, 2013. (Doc. 2.) The EEOC sent a right-to-sue letter for the retaliation charge January 31, 2013, (Doc. 8-1 at 3), and Adefila amended her complaint on February 12 (Doc. 8). The court dismissed Jackson as a defendant on June 25, 2013, on the ground that Adefila failed to perfect service of process within 120 days of filing the complaint. (Doc. 21.)

Select now moves for summary judgment on all claims. (Doc. 30.) Adefila responded (Doc. 34), and Select replied (Doc. 36).[3] The motion is ripe for consideration.

II. **ANALYSIS**

A. **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine dispute of material fact remains. When the non-moving party has the burden of proof, the moving party is entitled to summary judgment if it shows the absence of material disputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 325 (1986). "As the Supreme Court has made clear, 'courts should [not] treat discrimination differently from other ultimate questions of fact.'" Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010) (quoting U.S.

---

[3] After Select filed its reply brief and its motion was submitted to the court, Adefila filed two more documents, titled "Plaintiff's Response to Defendant's Reply Brief in Further Support of Motion for Summary Judgement [sic]" (Doc. 38), and "Plaintiff's Additional Response to Defendant's Reply Brief in Further Support of Motion for Summary Judgement [sic]" (Doc. 39). These filings constitute impermissible surreplies. The court's Local Rules "only allow for the filing of a motion, a response to a motion, and a reply." DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) (citing Local Rules 7.3 & 56.1). Unless new arguments are asserted in the opposing party's reply brief, a surreply is unnecessary. Id. Select merely replied to Adefila's response brief; it did not advance any new arguments. Thus, the court declines to consider Adefila's two filings, rendering Select's motion to strike (Doc. 40) moot.

6

Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In assessing whether a genuine dispute of material fact sufficient to preclude summary judgment exists, the court regards the non-movant's statements as true and accepts all admissible evidence and draws all inferences in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But a non-moving party must establish more than the "mere existence of a scintilla of evidence" to support his position. Id. at 252. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). Ultimately, summary judgment is appropriate where the non-movant fails to offer "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

**B. Title VII and ADA Discriminatory Discharge**

Title VII plaintiffs may establish discrimination either through the introduction of direct evidence or by utilizing the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998). Because Adefila has proffered no direct evidence of discrimination in this case,[4] she must proceed under McDonnell Douglas. In order

---

[4] Adefila has submitted an exhibit in which she claims that Jackson told her and a co-worker that Nigerians are cannibals. (Doc. 34 at

7

to establish a *prima facie* case of discriminatory discharge, she must show "(1) that she is a member of a protected class; (2) that she was qualified for her job and her job performance was satisfactory; (3) that, in spite of her qualifications and performance, she was fired; and (4) that the position remained open to similarly qualified applicants after her dismissal." Id. (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989)).

ADA claims are also evaluated under the burden-shifting framework. See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). To establish a *prima facie* wrongful discharge claim under the ADA, Adefila must show that (1) she "was a qualified individual with a disability," (2) she was terminated, (3) she "was fulfilling [Select's] legitimate expectations at the time of discharge," and (4) "the circumstances of [her] discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701

---

15.) Even assuming that this statement is admissible, it fails to establish discriminatory animus because the record reflects that Clark hired and fired Adefila, and there is no evidence that Jackson proximately caused her termination. See Staub v. Proctor Hosp., 131 S. Ct. 1186, 1191, 1194 (2011) (holding that an employer is liable under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311, - a statute "very similar to Title VII" - when a biased supervisor's action is intended to cause, and does proximately cause, an employee's termination); see also Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 288-89 (4th Cir. 2004) (discriminating supervisor must be "principally responsible" for adverse employment action) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151-52 (2000)).

8

F.3d 143, 150 (4th Cir. 2012) (quoting Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004)).

Adefila cannot establish a *prima facie* case under either Title VII or the ADA, because undisputed evidence shows her job performance was not satisfactory. Notably, she has introduced nothing to contradict Select's evidence that she was absent-minded, unable to present her reports clearly, failed to prioritize work over her personal break time, needed constant reminders to perform her job duties, and was resistant to following the Model Practices. She admitted in her deposition that she left prescription medication unattended in a patient's hospital room. (Adefila Dep. at 62.) In her reconsideration letter, she claimed that she only left the medication in the patient's room because she was paged to the nurses' station and then had to take the patient for a CT scan. (Doc. 34 at 9.) Taking this assertion as true, it does not refute the charge that she left the medication unattended while she responded to the call. Nor does it contradict the myriad other performance issues referred to in the declarations submitted by Select. Because Adefila cannot establish that she was performing her job at a satisfactory level, she cannot make out a *prima facie* case of discrimination under Title VII or the ADA.[5] The court need

---

[5] Moreover, Adefila was hired and fired by Clark within a span of six weeks. "As the Fourth Circuit consistently has made clear, 'where the

9

not determine whether Adefila can satisfy the other elements of the *prima facie* cases.

**C. Retaliation**

Without direct evidence, retaliation claims are also analyzed under the McDonnell Douglas framework. Karpel, 134 F.3d at 1228. To establish a *prima facie* retaliation claim, Adefila must show that (1) she engaged in a protected activity, (2) Select took an adverse employment action against her that a reasonable employee would find materially adverse, and (3) there was a causal link between the two events. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013). Adefila's retaliation theory is that Clark caused her termination from DaVita by telling her supervisor there that she had filed an EEOC charge against Select. (See Doc. 8-1 at 2.) However, she has produced no admissible evidence that anyone at DaVita knew that she had filed an EEOC charge. Therefore, she cannot satisfy the causation requirement. See Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001).

The only evidence regarding DaVita's knowledge is Adefila's testimony that the manager at DaVita who fired her told her that

---

hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.'" Springs v. Mayer Brown, LLP, Civ. No. 3:09CV352, 2009 WL 3461231, at *6 (W.D.N.C. Oct. 20, 2009) (quoting Proud v. Stone, 945 F.2d 796, 797-98 (4th Cir. 1991)).

10

Select informed DaVita that she had filed an EEOC charge. (Adefila Dep. at 28-29.) This evidence is inadmissible hearsay that the court cannot consider in opposition to a summary judgment motion. See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Where testimony includes two levels of hearsay, "both levels must either be excluded from the definition of hearsay or satisfy some exception to the hearsay rule" before the testimony may be admitted. United States v. Portsmouth Paving Corp., 694 F.2d 312, 321 (4th Cir. 1982). Thus, this evidence is insufficient to show that DaVita had knowledge of the EEOC charge. Adefila's retaliation claim must fail.

**D. Hostile Work Environment**

Finally, Adefila alleges that she was subjected to a hostile work environment while employed by Select. To survive summary judgment on this claim, Adefila must produce sufficient evidence for a reasonable jury to find that the conduct was (1) unwelcome; (2) based on her race or national origin; (3) "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) imputable to Select. EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009). This claim is based upon interactions between Adefila, who is an African-American of Nigerian descent (Doc. 8-1 at 5), and Jackson, an African-American immigrant from Sierra

11

Leone (Jackson Decl. ¶ 2). Even assuming the first two elements are satisfied, the evidence falls far short of establishing that Jackson's conduct was sufficiently severe or pervasive to maintain a hostile work environment claim.

Whether conduct is sufficiently "severe or pervasive" depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); see also Williams v. Aluminum Co. of Am., 457 F. Supp. 2d 596, 608 (M.D.N.C. 2006). To create a cause of action under Title VII, the harassment must be both subjectively and objectively hostile. Harris, 510 U.S. at 21-22. An objectively hostile work environment is one "that a reasonable person would find hostile or abusive." Id. at 21. "Whether the harassment is objectively severe or pervasive is judged from the perspective of a reasonable person in the plaintiff's position." Williams, 457 F. Supp. 2d at 608 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).

Title VII was not intended to create a general workplace civility code. See Jennings v. Univ. of N.C., 482 F.3d 686, 717 (4th Cir. 2007) (citing Faragher v. City of Boca Raton, 524 U.S.

12

775, 788 (1998)). As such, it "does not provide a remedy for every instance of verbal or physical harassment in the workplace." Murray v. City of Winston-Salem, 203 F. Supp. 2d 493, 499 (M.D.N.C. 2002) (quoting Lissau v. S. Food Serv., Inc., 159 F.3d 177, 183 (4th Cir. 1998)). "[P]laintiffs must clear a high bar to satisfy the severe or pervasive test." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (quoting Faragher, 524 U.S. at 788). On summary judgment, the court must "identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion." Id.

Here, the only alleged instances of conduct are that (1) Jackson slapped at Adefila's hands on three separate occasions in an attempt to grab patient files from her and yelled at Adefila four times (Adefila Dep. at 74-76); and (2) Jackson told her and a co-worker that Nigerians are cannibals (Doc. 34 at 15). The incidents other than the cannibals comment may be indicative of a strained supervisor-subordinate relationship, but they do not rise to the level necessary to state a hostile work environment claim. Also, there is no evidence that these incidents had to do with anything other than Adefila's work

13

performance.[6] The stray "cannibals" remark – even if considered by the court – cannot transform a garden variety dispute between an employee and her supervisor into a Title VII claim. See Alexander v. City of Greensboro, Nos. 1:09-CV-293, 1:09-CV-934, 2013 WL 6687237, at *18 (M.D.N.C. Dec. 18, 2013) (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 226 (1st Cir. 2012)). Therefore, Adefila's hostile work environment claim will be dismissed.[7]

**III. CONCLUSION**

For the reasons stated, Adefila's employment claims under Title VII and the ADA fail.

IT IS THEREFORE ORDERED that Select's motion for summary judgment (Doc. 30) is GRANTED, its motion to strike (Doc. 40) is DENIED AS MOOT, and this case is DISMISSED WITH PREJUDICE.

                                            /s/   Thomas D. Schroeder
                                          United States District Judge

June 24, 2014

---

[6] On the contrary, Adefila testified that the disputes between her and Jackson were "always about patient, work, it's about job [sic]." (Adefila Dep. at 76.)

[7] Adefila's response brief fails to cite to any legal authority and often fails to support factual assertions with citations to the record, in violation of this district's local rules. See, e.g., L.R. 56.1(d). Thus, the court has discretion to treat the motion for summary judgment as uncontested. Id. However, the Fourth Circuit has instructed that district courts have an obligation to review unopposed dispositive motions to ensure that dismissal is proper. See Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014).